JN/ABS:MGD
F. #2021R00387

Clerk's Office
Filed Date: 8/4/21

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – X

UNITED STATES OF AMERICA

    - against -

JOSEPH ABRENICA,

        Defendant.

– – – – – – – – – – – – – – – – X

I N F O R M A T I O N

Cr. No. 21-338 (LDH) (MMH)
(T. 18, U.S.C., §§ 982(a)(7),
982(b)(1), 1349 and 3551 et seq.;
T. 21, U.S.C., § 853(p))

THE UNITED STATES CHARGES:

## INTRODUCTION

At all times relevant to this Information, unless otherwise indicated:

I.    Background

    A.    The Medicare and Medicaid Programs

        1.    The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were at least 65 years old or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

        2.    The New York State Medicaid program ("Medicaid") was a federal and state health care program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. CMS was responsible for overseeing the Medicaid program in

participating states, including New York. Individuals who received benefits under Medicaid were similarly referred to as Medicaid "beneficiaries."

    3.  Medicare and Medicaid each qualified as a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

    4.  Medicare included coverage under two primary components, hospital insurance (Medicare Part A) and medical insurance (Medicare Part B). Medicare Part B covered the costs of physicians' services and outpatient care, including physical therapy, occupational therapy, chiropractic services and diagnostic tests. Generally, Medicare Part B covered these costs only if, among other requirements, they were medically necessary and ordered by a physician.

    5.  Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. Among the specific medical services and products provided by Medicaid were physical therapy and occupational therapy. Generally, Medicaid covered these costs only if, among other requirements, they were medically necessary and ordered by a physician.

    6.  Medical providers that sought to participate in Medicare Part B and Medicaid, and to bill Medicare and Medicaid for the cost of their treatment of eligible beneficiaries and related benefits, items and services, were required to apply for and receive a provider identification number ("PIN") or provider transaction access number ("PTAN") from each program. The PIN or PTAN allowed medical providers to submit bills, known as claims, to Medicare and Medicaid and to obtain reimbursement for the cost of treatment and related health care benefits, items and services that they had provided to beneficiaries.

7. Medical providers were authorized to submit claims to Medicare and Medicaid only for services they actually rendered and were required to maintain patient records verifying the provision of services. By submitting a claim, the provider certified, among other things, that the services were rendered to the patient and were medically necessary, and were not rendered as a result of kickbacks or bribes.

8. Providers submitted claims to Medicare and Medicaid using billing codes, also called current procedural terminology or "CPT" codes, which were numbers referring to specific descriptions of the medical services provided to beneficiaries.

B. The New York State No-Fault Automobile Insurance Program

9. Since 1974, New York State has maintained a "no-fault" liability automobile insurance coverage program ("No-Fault Insurance") for automobile drivers insured within the state.

10. New York's No-Fault Insurance law required automobile insurance companies (the "No-Fault Insurers") to automatically pay automobile insurance claims for certain types of motor vehicle accidents, provided the claims were legitimate and below a particular injury or damages threshold. This process was intended to resolve automobile claims without apportioning blame or fault for the accident, thereby avoiding the costs associated with an extended investigation of the accident or protracted litigation between the parties and their insurance companies.

11. Under New York's Comprehensive Motor Vehicle Insurance Reparations Act and the regulations promulgated thereto, all automobile insurers operating in the State of New York were required to provide No-Fault Insurance benefits to insured drivers. No-Fault

Insurance benefits included up to $50,000 per insured for necessary expenses that were incurred for health care items and services, including medical services.

12. The New York State No-Fault Insurance program qualified as a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

C. The Defendant and Relevant Entities

13. The defendant JOSEPH ABRENICA was a physical therapist who was licensed by the State of New York.

14. Company-1, an entity the identity of which is known to the United States, was a professional corporation owned by the defendant JOSEPH ABRENICA that purported to provide medical services, including physical therapy and diagnostic testing, to individuals within the Eastern District of New York.

15. Company-2, an entity the identity of which is known to the United States, was a professional corporation owned by the defendant JOSEPH ABRENICA that purported to provide medical services, including diagnostic testing, to individuals within the Eastern District of New York.

II. The Fraudulent Scheme

16. From in or about and between October 2018 and September 2020, the defendant JOSEPH ABRENICA, together with others, agreed to execute and executed a fraudulent scheme by which claims were submitted and caused to be submitted to Medicare, Medicaid and various No-Fault Insurers for physical therapy and diagnostic testing, even though such services were not medically necessary, not provided as billed, were procured by kickbacks and otherwise did not qualify for reimbursement.

17. In particular, the defendant JOSEPH ABRENICA, together with others, agreed to submit, and cause the submission of, false and fraudulent claims to Medicare and Medicaid reflecting that medically necessary physical therapy had been provided to beneficiaries by licensed physical therapists. In fact, such services were not medically necessary, had not been provided in the amount or manner claimed, had been provided by unlicensed persons and had been induced by the payment of kickbacks to beneficiaries and physical therapists.

18. In addition, the defendant JOSEPH ABRENICA, together with others, agreed to submit, and caused the submission of, false and fraudulent claims to No-Fault Insurers reflecting that diagnostic testing had been provided to No-Fault Insurance beneficiaries, when in fact the testing had not been conducted. Specifically, the claims falsely and fraudulently represented that the diagnostic testing had been provided by ABRENICA on behalf of Company-1 and Company-2 when, in fact, ABRENICA had not evaluated or even met the No-Fault Insurance beneficiaries on whose behalf such claims were submitted.

19. In furtherance of the conspiracy, the defendant JOSEPH ABRENICA, together with others, falsified various records pertaining to the provision of medical services, including but not limited to patient medical records and applications for insurance billing credentials, and caused such records to be falsified, to reflect, among other things, that medical services had been and would be provided by ABRENICA or under his supervision, when in fact no such services were provided or supervised by him.

CONSPIRACY TO COMMIT HEALTH CARE FRAUD

20. The allegations contained in paragraphs one through 19 are realleged and incorporated as if fully set forth in this paragraph.

21. In or about and between October 2018 and September 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH ABRENICA, together with others, did knowingly and willfully conspire to execute a scheme and artifice to defraud Medicare, Medicaid and various No-Fault Insurers, all health care benefit programs, as that term is defined under Title 18, United States Code, Section 24(b), and to obtain, by means of one or more materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, Medicare, Medicaid and such No-Fault Insurers, in connection with the delivery of and payment for health care benefits, items and services, contrary to Title 18, United States Code, Section 1347.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

22. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of a federal health care offense to forfeit property, real or personal, that constitutes, or is derived directly or indirectly from, gross proceeds traceable to the commission of such offense.

23. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21, United States Code, Section 853(p))

_____
JACQUELYN M. KASULIS
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

*Joseph S. Beemsterboer/mgd*
_____
JOSEPH S. BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

F.#: 2021R00387

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

JOSEPH ABRENICA,

Defendant.

# INFORMATION

(T. 18, U.S.C., §§ 982(a)(7), 982(b)(1), 1349 and 3551 et seq.;
T. 21, U.S.C., § 853(p))

*A true bill.*

_____
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

*Clerk*

*Bail, $* _____

***Miriam L. Glaser Dauermann, Trial Attorney (718) 254-7575***